**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Darnell Cain,<br>Petitioner<br>-vs-<br>Charles L. Ryan, *et al.*,<br>Respondents. | CV-13-2011-PHX-DGC (JFM)<br><br>**Report & Recommendation on**<br>**Petition for Writ of Habeas Corpus** |

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Safford, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 3, 2013 (Doc. 1). On January 30, 2014 Respondents filed their Response (Doc. 11). Petitioner has not filed a reply.

The Petitioner's Petition is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

### A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the facts (viewed in the light most favorable to the verdict):

> On June 4, 2009, Cain and two accomplices entered a convenience store in Gilbert, filled three large plastic bags with cigarettes, liquor, and other merchandise, and left without paying. The clerk who witnessed the incident called the police and the store manager. The store manager arrived, closed the store, and

1

> performed a "scan audit" on merchandise that was thought to be missing. Based on the audit, the manager estimated the total loss at $10,940-$10,200 for cigarettes, $700 for other tobacco products, and $40 for liquor.
>
> Four days later, on June 8th, Cain and the same two accomplices returned to the same convenience store. The three individuals again filled three large plastic bags with cigarettes, liquor, and other merchandise and left without paying. The same clerk was working and again called police and his store manager. The manager arrived soon thereafter, closed the store, and performed the same type of audit. The manager estimated the total loss from this theft at $11,500-$.10,000 for cigarettes, $900 for other tobacco products, $300 for liquor, and $300 for general merchandise. Both thefts were videotaped by surveillance cameras.
>
> Shortly after the June 8th incident, a Gilbert police officer saw a vehicle matching the description of the one seen fleeing the store and initiated a traffic stop. Officers arrested Cain and his accomplices, obtained a search warrant, and seized three large plastic bags filled with merchandise.

(Exhibit C, Mem. Dec. 11/29/11 at 2-3.) (Exhibits to the Answer, Doc. #, are referenced herein as "Exhibit ___.")

### B. PROCEEDINGS AT TRIAL

Petitioner and his accomplices were indicted in Maricopa County Superior Court on charges of burglary and theft for each of the two incidents. (Exhibit A, Indictment.) Petitioner proceeded to trial and was convicted on all counts. On March 22, 2010, the court found Petitioner to be a repeat offender and sentenced him to presumptive 10 year sentences on each of the burglary charges and 11.25 years on each of the theft charges, with the sentences on each incident running concurrently, but the sentences on the two incidents running consecutively. Thus, Petitioner received a combined sentence of 22.5 years in prison. (Exhibit C, Mem. Dec. at 3-4; Exhibit B, Sentence.)

### C. PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a delayed notice of direct appeal. (Exhibit D, Opening Brief at 2.) Counsel filed a brief (Exhibit D) arguing that the state failed to determine the values of the thefts, and the trial court erroneously issued consecutive sentences. On November 29, 2011, the Arizona Court of Appeals rejected the arguments and affirmed Petitioner's

2

convictions and sentences. (Exhibit C, Mem. Dec.)

Petitioner did not seek further review. (Exhibit C, Mandate 1/17/12; Petition, Doc. 1 at 3.)

### D. PROCEEDINGS ON POST-CONVICTION RELIEF

Petitioner then proceeded to file a series of notices of post-conviction relief.

**First PCR** – On March 26, 2012, Petitioner instituted his first PCR proceeding when counsel filed a PCR Notice (Exhibit E) asserting claims of ineffective assistance of counsel. On April 3, 2012, the PCR court summarily dismissed the proceeding as untimely, pursuant to Ariz. R. Crim. P. 32.4(a). (Exhibit F, M.E. 4/3/12.)

**Second PCR** – On August 31, 2012, Petitioner instituted his second PCR proceeding by filing a PCR Notice (Exhibit G), asserting he wished to present claims of ineffective assistance, newly discovered facts, change in the law, and actual innocence. On September 12, 2012, the PCR Court summarily dismissed the proceeding, finding that Petitioner failed to show with allegations of fact that his claims were of the type which could be raised in an untimely petition. (Exhibit H, M.E. 9/12/12.)

**Third PCR** – On October 9, 2012, Petitioner filed his third PCR Notice (Exhibit I), as well as a Petition for Post-Conviction Relief (Exhibit J) arguing newly discovered material facts, *i.e.* that he had been sentenced under statutes repealed at the time of his offense, and various changes in the law. On November 13, 2012, the PCR Court summarily dismissed the PCR petition as untimely and precluded because either waived or raised in prior proceedings. (Exhibit K, M.E. 11/13/12.)

**Review** – In his Petition, Petitioner alleges that he sought review of each of his three PCR proceedings in the Arizona Court of Appeals. However, he also explains that he did not do so because he "did not fully know [his] way around the legal system!" (Petition, Doc. 1 at 5.) Respondents allege that Petitioner did not seek review in any of his PCR proceedings. (Answer, Doc. 11 at 4-5.) However, Respondents point to no records which support that contention. Petitioner, of course, has not replied.

The resolution of this factual issue is reached via 28 U.S.C. § 2248, which provides that the "allegations…of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." Here, the undersigned finds no reason to reject the allegation of Respondents that Petitioner did not seek review. To the contrary, the timeline of Petitioner's filings in his three PCR proceedings, and the self-contradictory allegations of his Petition, suggest the correctness of Respondents' allegations.

### E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 3, 2013 (Doc. 11). Petitioner's Petition asserts the following three grounds for relief:

(1) the State failed to present sufficient evidence to prove one of the elements of theft at trial, and the court erroneously sentenced him to consecutive sentences;

(2) his defense counsel was ineffective; and

(3) newly discovered material facts could change the outcome of the verdict and sentence.

**Response** - On January 30, 2014, Respondents filed their Limited Response ("Answer") (Doc. 11). Respondents argue that the petition is barred under the habeas statute of limitations, and that Petitioner has procedurally defaulted his state remedies on his claims.

**Reply** – The Court's Service Order (Doc. 4) provided Petitioner 30 days from service of the answer to reply. Petitioner has not filed a reply, and the time to do so has now passed.

//

//

### III. APPLICATION OF LAW TO FACTS

**A. TIMELINESS**

Respondents assert that Petitioner's Petition is untimely. (Answer, Doc. 11 at 6, *et seq.*)

**1. One Year Limitations Period**

As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts. 28 U.S.C. § 2244(d). Petitions filed beyond the one year limitations period are barred and must be dismissed. *Id.*

**2. Commencement of Limitations Period**

The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

**Conviction Final** - Here, Petitioner's direct appeal remained pending at least through November 29, 2011, when the Arizona Court of Appeals denied his appeal. (Exhibit C, Mem. Dec..)  Thereafter, Petitioner had 30 days to seek further review by the Arizona Supreme Court. Ariz. R. Crim. P. 31.19(a).  Petitioner did not do so. Accordingly, his conviction became final on December 29, 2011 by "expiration of the time for seeking such review."

Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See*

28 U.S.C. § 2244(d)(1)(B)-(D). Except as discussed hereinafter, Petitioner proffers no argument that any of these apply.

**<u>New Constitutional Right</u>** - Petitioner did argue in the state courts that his claims were based on recent decisions in *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) and *State v. Donald*, 198 Ariz. 406, 10 P.3d 1193 (App. 2000). (Exhibit I, PCR Pet. at 5.)

*Donald,* of course, predates Petitioner's conviction (having been decided in 2000), and thus cannot be a newly recognized constitutional right.

*Lafler* held that a fair trial did not preclude a showing of prejudice from ineffective assistance leading the defendant's rejection of a favorable plea offer. Here, however, Petitioner did not plead guilty. Accordingly, *Lafler* can have no application to his claims. Moreover, the Ninth Circuit has concluded that *Lafler* did not decide a new rule of constitutional law, but "merely applied the Sixth Amendment right to effective assistance of counsel according to the test articulated in *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984), and established in the plea-bargaining context in *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)." *Buenrostro v. U.S.*, 697 F.3d 1137, 1140 (9th Cir. 2012).

Moreover, even assuming such cases established a new constitutional right, § 2244(d)(1)(C) requires that such a new right be made "retroactively applicable to cases on collateral review." Petitioner points to no decision making *Lafler* retroactively applicable. The undersigned knows of none.

**<u>Newly Discovered Factual Predicate</u>** - Petitioner also argued in his third PCR proceeding that he had newly discovered facts, in the form of his recent discovery of the purported repeal of the statutes under which he was sentenced. (Exhibit J, Petition at 2.) He raises the same argument in his Ground Three of the instant Petition. (Petition, Doc. 1 at 8.)

Although section 2244(d)(1)(D) does provide an alternative of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," and Petitioner alleges he had only recently

discovered those facts, Petitioner proffers nothing to show that he could not have discovered the repeal earlier had he exercised due diligence. For example, Petitioner does not suggest that the Arizona statutes were not available to him and his various counsel until the preparation of his third PCR petition, let alone until preparation of the instant petition

**Conclusion re Commencement** – Based on the foregoing, the undersigned concludes that Petitioner's one year limitations period commenced running on December 30, 2011, and without any tolling expired on December 29, 2012, making his October 3, 2013 Petition over ten months delinquent.[1]

**3. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies. Under this rule, a prisoner's state filings are deemed "filed" when they are delivered to prison officials for mailing. *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000). Pre-requisites to application of the mailbox rule include: (1) that the petitioner is not represented by counsel; and (2) the filing is delivered to prison officials for forwarding to the courts within the applicable period. Delivery to prison officials for forwarding to an attorney or other intermediary does not qualify. *Stillman v. LaMarque*, 319 F.3d 1199 (9th Cir. 2003). Because it does not affect the outcome, the undersigned generaly presumes herein that Petitioner's *pro se* filings were delivered to prison

---

[1] Petitioner's habeas Petition alleges he delivered it to prison officials for mailing on August 30, 2013. (Petition, Doc. 1 at 11.) Petitioner has not replied to suggest that its filing on October 3, 2013 was the result of delay by prison officials, rather than reflecting a misrepresentation in his Petition Even if this Court were to find that the Petition should be deemed filed as of that date, the extra 34 days would not be sufficient to make Petitioner's Petition timely.

officials for mailing to the courts on the date of the last signature on the filing.

Petitioner's limitations period commenced running on December 30, 2011. Petitioner's first PCR proceeding was commenced on March 26, 2012 when counsel filed Petitioner's first PCR notice (Exhibit E).  That proceeding remained pending until April 3, 2012, when the PCR court dismissed the proceeding.  (Exhibit F, M.E 4/3/12.) Thus, Petitioner's habeas limitations period was arguably tolled for the intervening seven days. This would extend his limitations period through January 5, 2013.

Petitioner's second PCR proceeding was commended no sooner than August 28, 2012, the date of signature on his second PCR notice (Exhibit G at 4), and remained pending until September 12, 2012, when the PCR court dismissed it.  (Exhibit H, M.E. 9/12/12.) Thus, Petitioner's habeas limitations period was arguably tolled for the intervening sixteen days. This would extend his limitations period through January 21, 2013.

Petitioner's third PCR proceeding was commended no sooner than September 27, 2012, the date of signature on his second PCR notice[2] (Exhibit G at 4), and remained pending until November 13, 2012, when the PCR court dismissed it.  (Exhibit K, M.E. 11/13/12.) Thus, Petitioner's habeas limitations period was arguably tolled for the intervening 48 days. This would extend his limitations period through March 11, 2013

Even with all statutory tolling for all three PCR proceedings, Petitioner's petition would be almost seven months delinquent.

Moreover, in *Pace v. DiGuglielmo*, 544 U.S. 408 (2005) the Court held that when a state post-conviction petition is untimely under state law, then it is not "properly filed" within the meaning of § 2244(d)(2) for purposes of statutory tolling.  Here, the PCR court plainly held Petitioner's first PCR proceeding to be untimely.  (Exhibit F, M.E. 4/3/12.)  Similarly, the PCR court held Petitioner's second and third PCR proceedings to be untimely because, having analyzed Petitioner's intended claims, the court concluded

---

[2] The date of the verification on the Petition for Post Conviction Relief submitted with his third PCR notice was October 1, 2012 (Exhibit J at 10), suggesting he did not actually present the notice for mailing until at least that date.

8

that Petitioner had failed to allege facts to bring his proceedings within the exceptions to the state's timeliness rule. (Exhibit H, M.E. 9/12/12; Exhibit K, M.E. 11/13/12.)

### 4. Equitable Tolling

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'" *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner does not proffer any grounds for equitable tolling, and the undersigned finds none.

### 5. Actual Innocence

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas

9

petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).  To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.* at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.

**<u>Insufficient Evidence</u>** - Petitioner does argue in his Ground One that the State failed to present sufficient evidence to prove one of the elements of theft at trial.  (Petition, Doc. 1 at 6.)   Even if true that would not establish his actual innocence. "Finally, as the *Schlup* decision explains, the gateway actual-innocence standard is 'by no means equivalent to the standard of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979),' which governs claims of insufficient evidence." *House v. Bell*, 547 U.S. 518, 538 (2006).  The Court in *House* explained that an insufficiency of the evidence claim is founded upon an evaluation of the evidence presented to the jury, while an actual innocence claim is founded upon "evidence the trial jury did not have before it." *Id.  See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a bank robbery case, without evidence that such insurance did not exist, was not sufficient to establish actual innocence where lack of such insurance not shown).  Indeed, such a determination is based upon all the available evidence, including evidence which may have been "excluded or unavailable at trial."  *Schlup*, 513 U.S. at 328. Petitioner makes no suggestion that all the available evidence (whether or not presented at trial) would preclude a reasonable juror from finding him guilty.

**<u>Repealed Sentencing Statute</u>** - Also, Petitioner does argue in his Ground Three that he has "[n]ewly discovered material facts" in the form of the purported repeal of the

10

applicable sentencing statutes in 2009. (Petition, Doc. 1 at 8.)

However, that would, at most, invalidate Petitioner's sentences.

In *Sawyer v. Whitley*, 505 U. S. 333 (1992), the Court extended the actual innocence exception to the bar on second and successive habeas petitions to claims of capital sentencing error. Acknowledging that the concept of "actual innocence" did not translate neatly into the capital sentencing context, the Court limited the exception to cases in which the applicant could show "by clear and convincing evidence that, but for constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Id.*, at 336.

In *Dretke v. Haley*, 541 U.S. 386, 393-394 (2004), the Court declined to address whether this also extended to actual innocence of a non-capital sentence, in that case a three-strikes sentence. The *Dretke* Court noted there was a divergence of opinion among the circuits on the issue. *Id*. at 392. The Ninth Circuit has not yet resolved the issue. *See Marrero v. Ives*, 682 F.3d 1190 (9th Cir. 2012) (discussing actual innocence of non-capital sentencing in the context of deciding whether a challenge to a federal sentence can be raised in a § 2241 habeas petition rather than a § 2255 motion to vacate, and noting the limited circumstances in which courts have permitted such claims).

Even if this Court could conclude that the actual innocence exception should apply to non-capital sentencing, Petitioner fails to show that he was actually innocent of the sentence given him.

In his Petition, Petitioner does not clarify the statutes he contends were repealed. In his PCR Petition in his third PCR proceeding, Petitioner argued that Ariz. Rev. Stat. §§ 13-604 and 13-702.01 had been repealed on January 1, 2009, and were referenced in a proffered plea agreement and his Sentence. (Exhibit J at 3-4.)

Indeed, Petitioner's written Sentence reflects that he was being sentenced pursuant to, *inter alia* "A.R.S. § 13-604" for purposes of finding prior felony convictions. (Exhibit B, Sentence at 4.)

It is also true that an earlier version of Ariz. Rev. Stat. § 13-604, which

11

1  established various sentencing ranges for various classes of repeat offenders, was
2  repealed effective January 1, 2009. *See* 2008 Ariz. Legis. Serv. Ch 301, § 15 (2008).
3  However, that same legislation enacted a new section 13-604. *Id.* That new section
4  regulated the classifications of Class 6 felonies as felonies or misdemeanors.

5       Here, the trial court's reference to § 13-604 was limited to identifying three prior
6  offenses as prior felony convictions, two of which were Class 6 felonies for possession
7  of marijuana, which under the version applicable in 2009 may have been eligible for
8  designation as Class 1 misdemeanors. (Exhibit B, Sentence at 4.) While the trial court
9  also referenced a Class 4 felony for failure to register as a sex offender (*id.*), which may
10  have been incongruent to the referenced to § 13-604, Petitioner proffers no reason to find
11  that such a reference rendered the sentence invalid.

12       Moreover, in finding Petitioner eligible for enhanced sentencing as a result of his
13  prior convictions, the trial court properly referenced Ariz. Rev. Stat. § 13-703(c).
14  (Exhibit B, Sentence at 2.) That provision, which took the place of the prior Ariz. Rev.
15  Stat. § 13-604, governed enhanced sentencing for repeat offenders. It was enacted in the
16  same legislation as the repeal of the prior § 13-604, and was in effect on January 1, 2009.
17  *See* 2008 Ariz. Legis. Serv. Ch 301, § 28 (2008).

18       Neither the oral pronouncement nor the written Sentence reference the other
19  repealed statute to which Petitioner points, Ariz. Rev. Stat. § 13-702.01. A proffered
20  plea agreement did. (*See* Exhibit J, PCR Petition at attachments, Plea Agreement at 1.)
21  An error in a proposed plea citing repealed statutes does not suggest that a sentence
22  imposed by the court after trial was on the basis of such a statute. The plea agreement
23  was never entered into, or adopted by the court.

24       It is true that at the sentencing hearing, the trial court did initially reference Ariz.
25  Rev. Stat. § 13-702.02(B)(4). (Exhibit P, R.T. 3/22/10 at 16.) That provision was
26  repealed as part of the same 2008 legislation. *See* 2008 Ariz. Legis. Serv. Ch 301, § 25
27  (2008). However, the trial court subsequently referenced the correct section, § 13-
28  703(C) (Exhibit P, R.T. 3/22/10 at 26), which is also reflected in the written Sentence.

In effect then, Petitioner attempts to leverage a partially incongruent but superfluous statutory reference in the written sentence, and a self-contradicted reference on the record to the repealed version of the repeat offender sentencing statute, into a claim of actual innocence of the sentence. What Petitioner does not do, however, is show that he was ineligible for the sentence he actually received. For example, he does not suggest that he did not have the requisite number of historical prior felony convictions, or that the sentence imposed exceeded that applicable for the crimes of conviction with those priors. Petitioner simply nitpicks at a superfluous citation and a singular, spoken, and subsequently twice corrected mistaken citation. Thus, even assuming that *Sawyer* applies in the context of the statute of limitations, and that it applies in the context of a non-capital sentence, Petitioner has failed to show that he is actually innocent of the sentence which he received.

### 6. Summary re Statute of Limitations

Taking into account the arguably available statutory tolling, Petitioner's one year habeas limitations period commenced running on December 30, 2011, and expired no later than March 11, 2013, making his Petition almost seven months delinquent. Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay. Consequently, the Petition must be dismissed with prejudice.

### B. EXHAUSTION & PROCEDURAL DEFAULT

Respondents also contend that Petitioner has procedurally defaulted his state remedies on his claims. Because the undersigned finds the Petition plainly barred by the applicable statute of limitations, this additional defense is not addressed.

### IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires

that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment. The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not "find it debatable whether the district court was correct in its procedural ruling." Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Petitioner's Petition for Writ of Habeas Corpus, filed October 3, 2013 (Doc. 1) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 8(b), Rules Governing Section 2254 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: March 28, 2014

13-2011r RR 14 03 26 on HC.docx

James F. Metcalf
United States Magistrate Judge